**ANTARES AIRCRAFT, L.P.,**
Plaintiff–Appellant,

v.

**FEDERAL REPUBLIC OF NIGERIA,**
Nigerian Airports Authority,
Defendants–Appellees.

Docket No. 91–7342.

United States Court of Appeals,
Second Circuit.

Submitted Aug. 17, 1992.

Decided Oct. 28, 1991.

Vacated June 29, 1992.

Decided July 21, 1993.

**34**

David F. Dobbins, New York City (Patterson, Belknap, Webb & Tyler, of counsel), for plaintiff-appellant.

Stephen D. Hoffman, New York City (Robert M. Klingon, Sive, Paget & Riesel, of counsel), for defendant-appellee Federal Republic of Nigeria.

Paul S. Reichler, Washington, DC (David K. Schorr, Reichler & Soble, of counsel), for defendant-appellee Nigerian Airports Authority.

Before: LUMBARD, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Antares Aircraft, L.P. brought this action for damages against appellees Federal Republic of Nigeria ("FRN") and Nigerian Airports Authority ("NAA") for the purportedly wrongful detention of Antares' aircraft. The district court granted appellees' motion to dismiss the complaint for lack of subject matter jurisdiction, and we affirmed. *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 948 F.2d 90 (1991), *vacated,* —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). The Supreme Court vacated our decision and remanded for further consideration in light of *Republic of Argentina v. Weltover, Inc.*, —— U.S. ——, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). Upon reconsideration, we again affirm because there was no "direct effect" of appellees' legally significant conduct in the United States, and the "commercial activity" exception of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), *see* 28 U.S.C. §§ 1602–1611 (Supp. II 1990), does not apply. *See* 28 U.S.C. § 1605(a)(2).

We assume familiarity with our previous decision, *Antares*, 948 F.2d at 92–93. Antares Aircraft is a Delaware limited partnership with its principal place of business in New York. The partnership's sole asset is a DC–8–55 aircraft registered in Nigeria. Purportedly because a former lessee of the plane had not paid certain airport landing and parking fees, the airplane was detained at the Murtala Muhammed Airport in Lagos, Nigeria. NAA, the airport authority, refused to release the airplane until the outstanding obligations were paid. After Antares' representatives negotiated with NAA in Nigeria, Antares sent payments totaling roughly $100,000 from a New York bank account. *Id.* at 93. Most of the money was sent to Nigeria and paid in Nigerian currency. Appellees claim that one of the payments went to a California bank to pay Antares' local counsel. *Id.* On May 23, 1989, after roughly five months, the plane was released. *Id.* at 93, 95. Meanwhile, it had suffered physical damage as a result of exposure to the elements.

▮] Thereafter, Antares filed this action against FRN and NAA in the Southern District of New York to recover damages for the alleged conversion of its plane. The FSIA bars lawsuits in state or federal courts against foreign states unless one of its exceptions applies. Appellees moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1603(a) (definition of "foreign state"); *Antares*, 948 F.2d at 93; *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–39, 109 S.Ct. 683, 687–91, 102 L.Ed.2d 818 (1989). Finding that none of the FSIA's exceptions were applicable, the district court dismissed the action for lack of subject matter jurisdiction.

On appeal, we rejected Antares' claim that either the "commercial activity" or the "expropriation" exceptions to the FSIA provided a ground for subject matter jurisdiction. We reasoned that the "direct effect" of appellees' legally significant conduct occurred in Nigeria and that appellees did not engage in "commercial activity in the United States." *See* 28 U.S.C. § 1605(a)(2), (a)(3); *Antares*, 948 F.2d at 95–97.

With regard to the "commercial activity" exception, our opinion relied upon *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145 (2d Cir.1991), *aff'd,* —— U.S. ——, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). In *Weltover*, plaintiffs, a Swiss bank and two Panamanian corporations, owned approximately $1.3 million worth of bonds issued by the Republic of Argentina. Like bonds issued by a private

entity, they had a repayment schedule including periodic interest and principal repayment at maturity. The bonds were U.S. dollar-denominated, and New York was the designated place of performance and where interest payments had been made. New York was also the location of Argentina's appointed financial agent. At the bonds' maturity in May 1986, Argentina attempted unilaterally to reschedule the bond payments. Plaintiffs rejected the rescheduling and brought suit in the Southern District of New York.

We held that the district court had jurisdiction under the "commercial activity" exception of the FSIA, *see Weltover*, 941 F.2d 145, 153, *aff'd*, —— U.S. ——, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992), because the "legally significant act," the breach, had a "direct effect in the United States," namely, payment was to take place in New York but did not. In 1992, the Supreme Court granted certiorari in *Weltover* and thereafter affirmed, holding, *inter alia*, that the "direct effect" of Argentina's breach of contract was in the the United States. The Court vacated our *Antares* decision and remanded it for further consideration in light of its decision. Because we find nothing in the Supreme Court's decision in *Weltover* that undermines our holding in *Antares*,[1] we again affirm.

According to Section 1604 of the FSIA, a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" unless the foreign state's conduct falls within one of the statutory exceptions. 28 U.S.C. §§ 1604, 1605–07; *Amerada Hess*, 488 U.S. at 434, 109 S.Ct. at 687–88; *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 485 n. 5, 493–94, 103 S.Ct. 1962, 1967 n. 5, 1971–72, 76 L.Ed.2d 81 (1983). The parties do not dispute that the NAA and the FRN qualify as "foreign states" and are immune absent an applicable statutory exception. The only exception at issue on this remand from the Supreme

Court is that for "commercial activity," *see* 28 U.S.C. § 1605(a)(2).

■ The "commercial activity" exception provides for jurisdiction in cases "in which the action is based ... upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The following is not in dispute. The "act outside the territory of the United States" was the allegedly wrongful detention of the plane in Nigeria. The detention of the aircraft and collection of fees were "in connection with a commercial activity of the foreign state." *See Antares*, 948 F.2d at 94. The final element of the "commercial activity" exception poses the issue remaining on this remand, namely, in light of *Weltover*, did the detention of the aircraft cause "a direct effect in the United States?"

In *Weltover*, the Court endorsed our view that "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's ... activity.'" —— U.S. at ——, 112 S.Ct. at 2168 (quoting *Weltover*, 941 F.2d at 152); *see also Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir.1993) (finding plaintiff's accident and injury in Georgia to be "immediate consequence" of French carmaker's allegedly defective design and manufacture). The Court did, however, reject our analytic approach of inquiring into what Congress "would have wanted." The Court held, rather, that the proper "question ... is not what Congress 'would have wanted' but what Congress enacted in the FSIA." —— U.S. at ——, 112 S.Ct. at 2168 (quoting *Weltover*, 941 F.2d at 153).[2] The Court also rejected as "too remote and attenuated," *id.*, any suggestion that the ground for the "direct effect in the United States" was a diminution in New York's status as "a world financial leader." 941 F.2d at 153. Nevertheless, the Court had "little difficulty concluding that Argentina's unilateral rescheduling of the

---

1. The Court's decision vacating our opinion does not imply a view as to the proper outcome on remand. *See, e.g., Beauford v. Helmsley*, 893 F.2d 1433 (2d Cir.1989) (reinstating previous en banc decision after reconsideration in light of Supreme Court decision).

2. Because the "what Congress 'would have wanted'" reasoning was not a basis for our *Antares* decision, the Court's rejection of this aspect of our analysis in *Weltover* does not undermine the holding in *Antares*.

maturity dates on the [bonds] had a 'direct effect' in the United States" because New York was the contractually designated "place of performance." —— U.S. at ——, 112 S.Ct. at 2168.

█] Although the Court did not expressly adopt our "legally significant acts" test, it used a similar analysis. *Weltover* involved a breach of contract, and the Court found decisive the fact that the contractually designated place of performance was New York. The "legally significant" act was thus the breach that occurred in the United States. In tort, the analog to contract law's place of performance is the *locus* of the tort, here Nigeria. However, the analogy is not precise. Although a contractual provision designating the United States as the place of performance is sufficient to *vest* jurisdiction under the FSIA, a foreign tort is not necessarily sufficient to *deprive* federal courts of jurisdiction because the foreign tort may have had sufficient contacts with the United States to establish the requisite "direct effect" in this country.

However, in the instant matter, all legally significant acts took place in Nigeria. The aircraft was registered in Nigeria. There is no evidence that the use of the aircraft was related to substantial commerce with the United States. The detention of, and physical damage to, the plane happened in Nigeria. The alleged conversion thus occurred in Nigeria. Moreover, the negotiations over, and the payment of, the outstanding fees occurred in Nigeria and utilized Nigerian currency.

That the money came from a bank account in New York is a fact but one without legal significance to the alleged tort. The Nigerian authorities were indifferent to the geographic location of the source of the money used to pay the fees. Their demands would have been satisfied had Antares paid from a London checking account or borrowed the funds from a bank in Lagos. Wherever the source of the money, payment had to be in Nigeria, just as the payment in *Weltover* had to be in New York. The tort thus began in Nigeria with the detention of the aircraft and ended in Nigeria with the payment of the money. Unlike *Weltover*, where the parties had agreed that performance was to occur in New York, the sole act connected to the United States in the instant matter, the drawing of a check on a bank in New York, was entirely fortuitous and entirely unrelated to the liability of the appellees.[3]

█ Antares argues that a "direct effect" of the tort occurred in the United States because an American partnership suffered a financial loss. We are unpersuaded. To be sure, the detention of Antares' sole asset affected the financial well-being of the American partnership. However, the fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to trigger the exception. *See Martin v. Republic of South Africa*, 836 F.2d 91 (2d Cir.1987) (finding that financial injury of person injured abroad is not a "direct effect" in United States); *Zernicek v. Brown & Root, Inc.*, 826 F.2d 415, 418 (5th Cir.1987) ("consequential damages [from personal injury tort abroad] are insufficient to constitute a 'direct effect in the United States' for purposes of abrogating sovereign immunity"), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988); *Australian Gov't Aircraft Factories v. Lynne*, 743 F.2d 672, 675 (9th Cir.1984) (similar), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1189, 84 L.Ed.2d 335 (1985); *Colonial Bank v. Compagnie Generale Maritime et Financiere*, 645 F.Supp. 1457, 1465 (S.D.N.Y.1986) (finding American bank's loss on ship mortgage from ship seizure to be indirect effect).

If a loss to an American individual and firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIA's provision of immunity for foreign states. Many commercial disputes, like the present one, can be pled as the torts of conversion or fraud and would, if appellant is correct, result in litigation concerning events with no connection with the United States other than the citizenship or place of incorporation of the plaintiff. Similarly, personal injury actions based on torts with no connection with this country, except for the plain-

3. Where or how appellant paid its attorney is of no relevance.

 

tiff's citizenship, might be brought under appellant's theory. For example, an American citizen injured in a foreign city by a government-owned bus company might sue here if the commercial activity exception is triggered solely by the fact that the citizen's wealth is diminished by the accident. We find it difficult to characterize such an effect, standing alone, as "direct" or to read into this otherwise somewhat restrictive legislation an all-encompassing jurisdiction for foreign torts.

We therefore reaffirm our prior decision.

ALTIMARI, Circuit Judge, dissenting:

Because I believe that the Supreme Court's affirmance of this Court's decision in *Weltover v. Republic of Argentina,* 941 F.2d 145 (2d Cir.1991), *aff'd,* —— U.S. ——, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992), coupled with the Court's decision to vacate and remand the instant case for further consideration in light of *Weltover, see Antares Aircraft, L.P. v. Federal Republic of Nigeria,* —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992), indicates that the Court believes that an American firm suffers a direct effect in the United States as a result of the expropriation of its property by a foreign sovereign, I must respectfully dissent.

Antares Aircraft, L.P. is an American limited partnership, whose legal status is not unlike that of a corporation.[1] As we noted in *Weltover,* "[w]here the plaintiff is a corporation, 'the relevant inquiry under the direct effect clause ... is whether the corporation has suffered a "direct" financial loss.'" *Weltover,* 941 F.2d at 152 (quoting *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 311 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982)). In *Weltover* we found it clear that "a foreign sovereign's improper commercial acts cause an effect to the foreign corporate plaintiff in that plaintiff's place of incorporation or principal place of

business." *Id.* Such must also hold true for an American firm seeking an assertion of jurisdiction under the Foreign Sovereign Immunities Act in order to recover a plane seized by a foreign sovereign.

Obviously corporations and limited partnerships are not natural persons, and consequently can only suffer financial rather than physical injuries. As noted above, in *Weltover* we concluded that these financial injuries are directly felt where a firm was organized or where its principal place of business is located. *Id.* By contrast, an individual suffers a physical injury at the location where the mishap occurs. Therefore, especially given the Supreme Court's affirmance of our analysis in *Weltover,* I find the majority's reliance on personal injury cases to be unpersuasive. *See, e.g., Martin v. Republic of South Africa,* 836 F.2d 91 (2d Cir.1987) (finding no direct effect where an American plaintiff was injured while in South Africa). Likewise, because here the American partnership was the actual owner of the plane, the one case cited by the majority involving a financial loss by an American firm is distinguishable, as the plaintiff in that case was the mortgagee rather than the owner of the vessel arrested. *See Colonial Bank v. Compagnie Generale Maritime et Financiere,* 645 F.Supp. 1457, 1464–65 (S.D.N.Y.1986) (concluding that the seizure of a vessel had a direct effect on the owner but only an indirect effect on the mortgagee). Accordingly, upon further reflection in light of the Supreme Court's affirmance of our decision in *Weltover* and its subsequent remand of the instant case in light of *Weltover,* I conclude that the American partnership suffered a direct effect in the United States within the meaning of § 1605(a)(2) of the Foreign Sovereign Immunities Act.

---

1. Although I acknowledge that notwithstanding this fact, limited partnerships are treated differently than corporations in the "technical, precedent-bound" area of diversity jurisdiction. *See Carden v. Arkoma Associates,* 494 U.S. 185, 195–96, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990) (holding that for purposes of determining diversity jurisdiction the citizenship of all the members

of the limited partnership must be taken into account). While I do not believe that this difference in treatment is relevant, one could argue *a fortiori* that there was a pronounced effect in this country, because a limited partnership's loss would be felt in every state where a limited partner was a citizen.