**HANIL BANK, Plaintiff–Appellee,**

v.

**PT. BANK NEGARA INDONESIA, (PERSERO), Defendant– Appellant.**

No. 97–7961.

United States Court of Appeals, Second Circuit.

Argued March 12, 1998.

Decided June 24, 1998.

Christopher Brady, New York City, (Mary C. Mone, Hollyer Brady Smith Troxell Barrett Rockett Hines & Mone LLP, New York City, of counsel), for Defendant–Appellant.

Elliot Silverman, New York City, (McDermott, Will & Emery, New York City, of counsel), for Plaintiff–Appellee.

Before: CARDAMONE, WALKER, and MAGILL*, Circuit Judges.

* Hon. Frank J. Magill, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by

CARDAMONE, Circuit Judge:

■ On this appeal an Indonesian bank asks us to reverse a trial court that asserted jurisdiction over it when it failed to make payment on a letter of credit that designated New York City as the place of payment. The policy of the United States, as codified in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* (FSIA or Act), is to grant immunity from suit in the courts of this country to foreign states and corporations owned by such foreign states for acts taken pursuant to their sovereign power even though they impact the United States. Under the Act's "commercial activity" exception, however, foreign states are not immune from federal jurisdiction for those actions taken that are similar to those of a private participant engaged in commerce. The facts revealed in this record persuade us that the exception to immunity applies because the banking transaction at issue had a "direct effect" in the United States, and further, that exercising jurisdiction in this case would not offend Due Process because the Indonesian bank could not reasonably expect to be safe from suit in this country. Accordingly, we affirm.

## BACKGROUND

In 1995 an Indonesian manufacturer of car radios, PT. Kodeco Electronics Indonesia (Kodeco), negotiated with Sung Jin Electronics Co., Ltd. (Sung Jin), a Korean electronic parts supplier, to purchase automobile radio parts. Kodeco's purchase was financed by a letter of credit issued by defendant Indonesian bank, PT. Bank Negara Indonesia (Persero) (BNI), in the amount of $170,955. The seller, Sung Jin, was the named beneficiary of the letter of credit. After shipping the radio parts to Kodeco in Indonesia, Sung Jin presented the letter and accompanying documents for payment to plaintiff, Hanil Bank (Hanil), a Korean bank that served as the negotiating bank. Hanil Bank paid Sung Jin $157,493—the amount of the sight draft.

BNI's letter of credit provided that "[u]pon receipt of documents in conformity with terms of this credit we will reimburse the

designation.

negotiating bank according to their instruction." Pursuant to that statement, on August 2, 1995, plaintiff Hanil forwarded the letter-of-credit documents to defendant BNI in Indonesia and instructed BNI to remit $157,493 due it under the letter of credit in United States dollars to its Citibank account in New York. BNI refused payment.

As a result of BNI's failure to pay, Hanil filed a breach of contract action against BNI on April 19, 1996 in New York State Supreme Court. After removing the action to federal court pursuant to 28 U.S.C. § 1441(d), defendant moved to dismiss plaintiff's case under Fed.R.Civ.P. 12(b)(1) and 12(b)(2). BNI contended that because it was immune from suit in the United States under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1604, the district court lacked subject matter jurisdiction. BNI also asserted that the district court lacked personal jurisdiction because service of process was insufficient under § 1608 of the Act.

The United States District Court for the Southern District of New York, John F. Keenan, Judge, rejected BNI's sovereign immunity defense. *See Hanil Bank v. Pt. Bank Negara Indonesia (Persero)*, No. 96 Civ. 3201, 1997 WL 411465, at *2–3 (S.D.N.Y. July 18, 1997). In addition, while it found service of process was insufficiently made on defendant, it refused, in the interests of justice, to dismiss plaintiff's case. Instead, the district court allowed plaintiff Hanil Bank additional time to perfect service in accordance with 28 U.S.C. § 1608(b). *See id.* at *4.

■ BNI appealed, challenging the district court's jurisdiction in light of its sovereign immunity defense. We have jurisdiction over this appeal because the denial of a motion to dismiss on immunity grounds under the FSIA is immediately appealable as a collateral order. *See Drexel Burnham Lambert Group Inc. v. Committee of Receivers for A.W. Galadari*, 12 F.3d 317, 324 (2d Cir.1993).

## DISCUSSION

### A. *Jurisdiction of Federal Courts Over Foreign Sovereigns*

■ Between 1812 and 1952 the United States granted foreign nations complete immunity from suits in the courts of this country. As international commercial activity increased, however, the U.S. Department of State in the 1952 Tate Letter adopted a position limiting foreign states' immunity only to public acts of a foreign sovereign. This so-called restrictive principle of foreign sovereign immunity thereafter was codified by the 1976 enactment of the FSIA. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 359–60, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). The FSIA is now the sole means for obtaining jurisdiction over a foreign state in federal court. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989).

■ BNI is a "foreign state" by virtue of the fact that it is owned by a foreign government—Indonesia. *See* 28 U.S.C. §§ 1603(a), (b); *NYSA–ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35, 37–38 (2d Cir.1993). Under the FSIA, a foreign state is immune from suit in the United States with respect to its "sovereign or public" acts, but not immune from suit for those acts characterized as its "private or commercial" acts. *See Nelson*, 507 U.S. at 359–60, 113 S.Ct. 1471. If a state's acts do not qualify for immunity under the FSIA, district courts have original jurisdiction over the action pursuant to 28 U.S.C. § 1330(a), so long as the state was properly served under § 1608. *See* 28 U.S.C. § 1330(b).

### B. *Commercial Activity Exception*

The single most important exception to foreign state immunity under the FSIA is the "commercial activity" exception. That exception provides that a foreign state will not be immune from suit in any case

[1] in which the action is based upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and

that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

■ The district court ruled that when BNI failed to pay the letter of credit, such action had a "direct effect" in the United States. *See Hanil Bank*, 1997 WL 411465 at *3. Thus, it found that the "commercial activity" exception to the foreign state's sovereign immunity applied. *See id.* We review that ruling of law *de novo*. *See Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 241 (2d Cir.1994).

■ The third clause of § 1605(a)(2) excepts a foreign state from sovereign immunity where suit is based upon an act that occurs outside the United States, that was taken "in connection with a commercial activity," and that causes a "direct effect" in the United States. A state engages in "commercial activity" for purposes of the FSIA where it acts not in its governmental or public role, but rather like a private player in the marketplace. *See Nelson*, 507 U.S. at 360, 113 S.Ct. 1471. Acts are "in connection" with such commercial activity so long as there is a "substantive connection" or a "causal link" between them and the commercial activity. *See Adler v. Federal Republic of Nigeria*, 107 F.3d 720, 726 (9th Cir.1997) (quoting *Federal Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1289–91 (3rd Cir.1993)).

BNI conceded that the issuance of the letter of credit and its subsequent failure to honor it constitute commercial activity that occurred outside the United States. The only issue remaining to be decided therefore is whether BNI's failure to make payment on the letter of credit had a "direct effect" in the United States.

### C. Direct Effect

The Supreme Court discussed the "direct effect" requirement of the FSIA most recently in *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). There, Argentina had issued bonds as part of a plan to stabilize its currency, providing for repayment in United States dollars through one of several markets, *i.e.*, New York, London, Zurich, and Frankfurt. *See id.* at 609, 112 S.Ct. 2160. When the bonds matured, Argentina lacked sufficient reserves to pay them, so it unilaterally extended the time for their redemption. *See id.* at 610, 112 S.Ct. 2160. Two Panamanian corporations and a Swiss bank refused to accept this rescheduling and insisted on full payment of the bonds in New York. When Argentina refused, these bondholders filed suit.

After proceeding through the courts of this Circuit, the case reached the Supreme Court, which explained that an effect is direct if "it follows 'as an immediate consequence of the defendant's ... activity.'" *Id.* at 618, 112 S.Ct. 2160 (quoting *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 152 (2d Cir. 1991)). The Supreme Court further observed that the effect need not be substantial or foreseeable in order to be direct. *See id.* It held that Argentina's unilateral rescheduling of the maturity dates on the bonds had such a direct effect on the United States, stating

> [bondholders] had designated their accounts in New York as the place of payment, and Argentina made some interest payments into those accounts before announcing that it was rescheduling the payments. Because New York was thus the place of performance for Argentina's ultimate contractual obligations, the rescheduling of those obligations necessarily had a "direct effect" in the United States: Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming. We reject Argentina's suggestion that the "direct effect" requirement cannot be satisfied where the plaintiffs are all foreign corporations with no other connections to the United States.

*Id.* at 619, 112 S.Ct. 2160.

We relied on the rationale expressed in *Weltover* two years later in *Rafidain Bank*, 15 F.3d 238. In *Rafidain Bank*, the Commercial Bank of Kuwait sued Rafidain Bank, a commercial bank wholly owned by Iraq, and the Central Bank of Iraq, the Iraqi central banking authority, for breach of certain commercial guarantees and on a letter of credit under which plaintiff had paid out

more than $7.4 million. *See id.* at 239–40. Although the agreements at issue required the Iraqi banks to make payments in U.S. dollars into accounts in New York City, such payments were not to be made directly to the plaintiff, but to New York bank accounts held by the lead banks of the different lending syndicates. *See id.* at 241. The plan envisioned that the lead banks would distribute the amounts owed to the other banks in the syndicate, such as Commercial Bank of Kuwait. The Iraqi banks argued that because their obligations to the Commercial Bank of Kuwait were not required to be performed in the United States, there could be no direct effect in the United States. *See id.* We rejected this argument, holding instead that the Iraqi banks' failure to remit funds in New York, as contractually obligated, had a direct effect in the United States under *Weltover*. *Id.* at 241.

■ Based on the reasoning in *Weltover* and *Rafidain Bank*, BNI's actions in Indonesia similarly caused a direct effect in the United States. Hanil Bank was entitled under the letter of credit to indicate how it would be reimbursed, and it designated payment to its bank account in New York. As a result of BNI's breach, in the words of the Supreme Court, "[m]oney that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Weltover*, 504 U.S. at 619, 112 S.Ct. 2160.

BNI insists that the facts in *Weltover* and *Rafidain Bank* distinguish those cases from the present circumstances to such an extent that they provide no authority for the federal courts to assume jurisdiction here. It maintains that it never expressly agreed to New York as the place of payment, as Argentina had in *Weltover* and the Iraqi banks had in *Rafidain Bank*. Further, defendant avers, unlike the defendant in *Weltover*, BNI had not made prior payments to a New York account.

These are distinctions without a difference. Although the letter of credit did not itself specify New York as the place of payment, it authorized the negotiating bank to designate the place of payment. In so doing, BNI consented to pay the relevant amount at a location chosen by plaintiff Hanil, wherever that might be. Accordingly, when Hanil specified New York in its correspondence, BNI had already impliedly agreed to New York as the place of payment. Moreover, the distinction defendant draws with *Weltover* is off-target because the bonds in *Weltover* did not specify New York as the sole place of payment, but rather listed New York as only one of four places that could be chosen by creditors for payment. *See* 504 U.S. at 609–10, 112 S.Ct. 2160. The plaintiff creditors elected New York, which, rather than distinguishing *Weltover* from the facts of the case at hand, makes the two quite similar. Hence, we see no real factual difference between *Weltover* and the present case regarding the parties' agreement as to place of payment. Because Hanil specified a New York bank account into which the funds were to be deposited—and because BNI had not eliminated New York as an option in the letter of credit it issued—its breach resulted in the failure of funds destined for New York to arrive there.

Further, simply because Argentina had made payments on the bonds to the New York accounts in *Weltover* does not now mandate the existence of such pre-default payments in order for there to be a direct effect in the United States. Whether, in the days leading up to a default, payments have or have not been made in a certain location is not a significant factor in our direct effect inquiry. The default itself necessarily results in the non-appearance of monies intended for deposit at that location and is all *Weltover* requires to cause a direct effect in this country. *See* 504 U.S. at 618, 112 S.Ct. 2160 (stating that the effect in the United States need not be foreseeable).

We find support for this conclusion in the Ninth Circuit's decision in *Adler v. Federal Republic of Nigeria*, 107 F.3d 720. There Adler, a United States citizen, contracted with the Republic of Nigeria to provide certain banking services in exchange for a commission. *Id.* at 722. The contract provided that he would denote a non-Nigerian bank account into which the money owed him would be transferred. After first specifying an account in the Cayman Islands, Adler changed the designation to an account in

New York. *See id.* at 723. When Nigeria failed to pay him, Adler asserted under *Weltover* that Nigeria's failure caused a direct effect in the United States and that the federal courts had jurisdiction over his suit despite Nigeria's sovereign immunity defense. *See id.* at 727. Nigeria urged that the case was distinguishable from *Weltover* in that: (1) the terms of its agreement did not require it to make any payment in New York; (2) it had never made any payments to New York prior to the alleged default; (3) Adler originally requested payment in the Cayman Islands; and (4) Adler was using the New York bank only as an intermediary for the transfer of funds. *See id.* at 728–29.

The foreign state claimed that because of these factual differences between its case and *Weltover,* its actions could not have caused a direct effect in the United States. The Ninth Circuit was unpersuaded by Nigeria's efforts and held that because the agreement allowed Adler to choose the place of payment, and he had ultimately chosen New York, Nigeria's failure to pay had a direct effect in the United States regardless of the distinctions between its facts and those in *Weltover. See* 107 F.3d at 729.

■ BNI's last contention on this issue is that there can be no direct effect in the United States because Indonesia is the "place of performance" under letter of credit law. We are unable to adopt this point of view. Even assuming that Indonesia *is* the place of performance under letter of credit law, *Weltover* does not insist the "place of performance" be in the United States in order for a financial transaction to cause a direct effect in this country. Rather, it only requires an effect in the United States that follows as an immediate consequence of the defendant's actions overseas. Further, it need not be the location where the *most* direct effect is felt, simply *a* direct effect. Such a direct effect was felt in the United States as a result of defendant's breach. The failure of money to reach plaintiff's New York bank account was an immediate consequence of defendant BNI's actions in Indonesia. As a consequence, we hold that this act outside the United States caused a direct effect in the United States.

D. *Legally Significant Acts*

The result reached in this case would not be altered under the "legally significant acts" test that we reaffirmed in *Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 999 F.2d 33 (2d Cir.1993). *Antares Aircraft* concerned an airline's suit against Nigeria for the wrongful detention of its aircraft. *Id.* at 34. Although the American airline obviously suffered financial loss in the United States, we held that the "direct effect" test could not be met. We reasoned that "the fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to trigger the exception" to sovereign immunity. *Id.* at 36.

We had applied the "legally significant acts" test in *Weltover* when that case was before us—prior to the Supreme Court's review. Although the Supreme Court did not expressly adopt that test in its *Weltover* opinion, we concluded in *Antares Aircraft* that because the High Court had used a somewhat similar analysis, the test was still viable. *See* 999 F.2d at 36. We then ruled that because all of the legally significant acts, including the detention of the aircraft and the negotiations over the dispute, occurred in *Nigeria,* there could be no direct effect in the United States. *See id.* at 36–37.

■ BNI declares that the legally significant acts test provides a reason for the federal courts to decline jurisdiction here because, in its view, all of the legally significant acts in this case occurred in Indonesia. We do not agree. Our analysis of the legally significant acts of the *tort* at issue in *Antares Aircraft* is not directly applicable to the *contract* at issue in the present case. In addition, while concededly the main events leading up to the dispute in this case occurred in Indonesia and Korea, the most legally significant act—the breach of contract—occurred in the United States when defendant BNI failed to make good on its financial obligation. *See Antares Aircraft,* 999 F.2d at 36 (discussing *Weltover* and stating that the legally significant act in that case was the breach that occurred in New York).

### E. *Due Process*

Finally, we address BNI's argument that the district court's assertion of jurisdiction over it fails to satisfy the Due Process Clause of the Fifth Amendment. In *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300 (2d Cir.1981), we held that the exercise of jurisdiction over foreign states sued under the FSIA was subject to the same constitutional constraints which "otherwise regulate every exercise of personal jurisdiction." *See id.* at 313 (holding that a foreign state is a "person" within the meaning of the Due Process Clause). However, since the Supreme Court decided *Weltover,* we are uncertain whether our holding remains good law. In *Weltover,* the Supreme Court "[a]ssum[ed], without deciding, that a foreign state is a 'person' for purposes of the Due Process Clause." *See* 504 U.S. at 619, 112 S.Ct. 2160. But, immediately after making that statement, the Court cited *South Carolina v. Katzenbach,* 383 U.S. 301, 323–24, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966), in which it had held that States of the Union were *not* "persons" under the Due Process Clause. The *Weltover* Court then determined that Argentina possessed "minimum contacts" that would satisfy the constitutional test. *See* 504 U.S. at 619, 112 S.Ct. 2160.

We need not resolve the exact status of a foreign sovereign for due process analysis because we believe, in any event, that the due process requirements have been met here. BNI implicitly consented to make payment on the letter of credit wherever Hanil Bank specified, including New York City. Further, BNI should reasonably have expected that Hanil Bank would choose a United States destination because Hanil Bank had done just that in a similar, previous transaction between plaintiff and defendant banks. According to a Hanil employee, BNI had issued a letter of credit with the same language regarding reimbursement according to Hanil's instructions, and after Hanil had designated payment to an account in New York, BNI paid Hanil by wiring funds to that New York account. These circumstances persuade us that BNI possessed "minimum contacts" sufficient to satisfy the constitutional test.

Moreover, as previously observed, Congress enacted FSIA specifically to provide access to the courts. *See Texas Trading,* 647 F.2d at 315 (quoting H.R.Rep. No. 94–1487, at 6–7 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6605). Given that purpose, BNI should reasonably have expected to be sued in the United States were it to fail to make a payment in New York. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ("[T]he defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").

Accordingly, as plaintiff is entitled to access to our courts and defendant could reasonably anticipate being haled into these same courts, the maintenance of jurisdiction over this FSIA action does not in our view "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court denying defendant BNI, an Indonesian corporation, sovereign immunity under the FSIA.