BOYCE F. MARTIN, JR., Circuit
Judge, concurring in part and dissenting in part.
While I concur in full with the majority’s reasoning and holding on the issue of forum non conveniens, I must disagree with its holding on the issue of jurisdiction over this claim.
The facts of this case are extraordinarily complicated. Essentially, Skye, an American corporation, went abroad and purchased Venezuelan notes, known as “Bandagro notes,” from a Panamanian corporation, Gruppo Triad, and demanded payment from Venezuela in Columbus, Ohio. Venezuela did not pay. The district court found that this constituted a sufficient “direct effect” on United States commerce to create federal jurisdiction and defeat sovereign immunity. The majority affirms the holding of the district court, and I respectfully dissent.
The Foreign Sovereign Immunities Act of 1976 (“FSIA”), 28 U.S.C. §§ 1602-11, “grants federal district courts jurisdiction over civil actions against foreign states ‘as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity’ under either another provision of the FSIA or ‘any applicable international agreement.’ ” Republic of Austria v. Altmann, 541 U.S. 677, 681, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (quoting 28 U.S.C. § 1330(a)). Essentially, the court first presumes immunity, pursuant to section 1604, but looks for an exception, found in sections 1605-07; then, only if the court finds that the “foreign state is not entitled to immunity” will the court have subject matter jurisdiction, pursuant to section 1330(a).
*521 Skye contends that the “commercial activity exception” to the FSIA divests Venezuela of foreign sovereign immunity. That exception states, in pertinent part:
A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the action is based ... upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
28 U.S.C. § 1605(a)(2) (emphasis added). “[A]n effect is direct if it follows as an immediate consequence of the defendant’s activity.” Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). “Of course the generally applicable principle de minimis non curat lex ensures that jurisdiction may not be predicated on purely trivial effects in the United States. But we reject the suggestion that § 1605(a)(2) contains any unexpressed requirement of ‘substantiality’ or ‘foreseeability.’ ” Id.[1] In Weltover, the Supreme Court held that there was a direct effect when the Argentinian bonds specified for payment locations, one of which was New York, and Argentina had begun making payments to the plaintiffs in New York before unilaterally rescheduling its debts and suspending payments. Id.
We recently held that “the mere act of including an American company in or excluding an American company from the process of bidding on a contract, where both parties’ performance is to occur entirely in a foreign locale, does not, standing alone, produce an immediate consequence in the United States, and thus does not have a direct effect in the United States.” Am. Telecom Co., 501 F.3d at 541. We also held that, “even if [the payment of $30,000 from an American bank to enter a bid] produced a direct effect, that effect was not caused by [the country], American Telecom was not required to submit payment from an American bank; it chose to do so, and to the extent that making that payment had a direct effect in the United States, the effect was the direct result of American Telecom’s action, not [the country’s].” Id. (emphasis in original).
In this case, Skye, an American corporation, went abroad and purchased Venezuelan notes from a Panamanian corporation, Gruppo Triad. Skye then brought the bonds to a bank in Columbus, Ohio and demanded payment. Venezuela refused to pay. That Skye chose to use an American bank from which to request payment is not sufficient to defeat sovereign immunity under American Telecom. If it were sufficient, everyone would request payment here so as to gain access to local federal courts. Thus, I agree with the majority that the pre-suit demand for payment is not enough to create federal jurisdiction and defeat sovereign immunity.
However, this does not end the inquiry. The note itself may create federal jurisdiction in the United States and concede sovereign immunity by expressly stating a place of performance in the United States, see Weltover, 504 U.S. at 618, 112 S.Ct. 2160, or by not specifying a place of performance but instead expressly granting the plaintiff the right to choose the place. In that case, if the plaintiff designates the United States, then failure to pay can constitute a direct effect. See, e.g., Keller v. Cent. Bank of Nigeria, 277 F.3d 811, 818 *522 (6th Cir.2002) (plaintiff was to set up escrow account for payment anywhere); Hanil Bank v. PT. Bank Negara Indonesia, 148 F.3d 127, 132 (2d Cir.1998) (plaintiff “was entitled under the letter of credit to indicate how it would be reimbursed, and it designated payment to its bank account in New York”). However, if the bond is silent on the place of performance, then there is no basis for United States jurisdiction over ensuing claims, even if the injury is somehow felt in the United States. See, e.g., Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov’t, 533 F.3d 1183, 1191 (10th Cir.2008) (no jurisdiction where “the joint venture did not require any action in the United States, the failure of which to occur could constitute a direct effect”); Pederson v. Royal Kingdom of Saudi Arabia, 416 F.3d 83, 91 (D.C.Cir.2005) (no direct effect where “Saudi Arabia ‘might well have paid’ [the American plaintiff] or another employee in the United States ‘but it might just as well have done so’ outside the United States”).
Here, it is undisputed that the Notes did not expressly state a place of performance in the United States and that they do not specifically state that their holder can demand payment in the ^United States. However, the parties dispute whether the Notes grant the holder the right to state the place of performance and specifically on what the concept of a “place of payment” means.
I find this issue to be most clearly crystalized in the dueling translations of a case from a Swiss court that examined Bandagro bonds, including those at issue here, to determine whether jurisdiction over Venezuela existed in Switzerland, that were submitted by the parties here.[2] Woodsrite Investments Ltd. v. Gruppo Triad, et al., File No. OA200487 (District Court of Mendrisio Sud, Canton of Ticino, Switzerland) (R.E. 137-1 and 137-2). Venezuela purports that the relevant paragraph of Woodsrite is accurately translated:
In addition to the above, there is no connection between the legal business regarding the promissory notes, as well as the guarantee they represent, and Switzerland; and, since the legal relationship has no connection with the Swiss territory, it would seem, according to what has been stated, that the securities can be redeemed anywhere, and paid in any requested currency.
(Affidavit of Aura Colmanni, July 26, 2010, at 3). On the other hand, Skye purports that the relevant section is most accurately translated as:
The BANDAGRO promissory notes make express reference to the applicability of Swiss law and according to the rules of issue, which refer to the ICC *523 rules, they may be called for payment in any part of the world.... Indeed, the court fails to see how the connection with Switzerland cannot be established, because payment of the notes, in accordance with the clauses they contain, is requested in the place in which they are found, by bringing an action before a Swiss court which must apply Swiss law.
(Skye’s letter brief, July 1, 2010, at 2). If I did not know better, I would assume that these were translations from two different cases. As presented here, they demonstrate the fundamental difference in the understanding of payment in these cases: if it matters where the payment is demanded or from where the payment is demanded. In other words, is the fact that a noteholder may go to a bank anywhere in the world to request payment the same as designating every location as a place of payment, an action that waives sovereign immunity as to every country in which a noteholder may take a note after its purchase?
The method by which a noteholder may demand payment of the Notes at issue seems complicated. The noteholder goes to its bank and asks the bank to demand payment. Using a series of wires, the bank requests payment from a Venezuelan bank and receives the payment in that bank. The payment is then wired back to the noteholder’s bank. Essentially, the bank uses wire transfers to act as the noteholder’s proxy in going to Venezuela and requesting payment, which makes sense; it would be extraordinarily inefficient to require noteholders to purchase a plane ticket in order to request payment on their notes.[3]
It seems likely that the bonds would not be easily negotiable internationally if a noteholder had to go to the country that issued the note in order to demand payment. However, it is incredible that a country issuing notes would, under any circumstances, waive its sovereign immunity in every country in the world in which a noteholder could take the notes and find a bank to act as its proxy without expressly so stating in the note. Such a waiver is far too broad to read into a document. Our laws presume sovereign immunity; unless there is an obviously implicit waiver, we ought not to create such an unwieldy exception to this important protection. To so find would gut the laws of sovereign immunity.
Thus, I disagree with the majority and would find that, while a noteholder may request that a bank anywhere in the world demand payment on its behalf, this does not waive Venezuela’s sovereign immunity. The effect on the United States is not direct because it is not “an immediate consequence of the defendant’s activity” as required by Weltover. It was a consequence of Skye’s choice of the United States and the choice of an American bank as its proxy to acquire the payment from the Venezuelan bank — not of Venezuela’s express or implied waiver of sovereign immunity.
I therefore respectfully dissent from the majority’s holding that this Court has jurisdiction to consider this claim.

. This Court has rejected the "legally significant act” test that is required in the Eighth, Ninth, and Tenth Circuits, and expressly renounced in the Fifth Circuit. See Am. Telecom Co. v. Republic of Lebanon, 501 F.3d 534, 540 (6th Cir.2007) (citing Keller v. Cent. Bank of Nigeria, 277 F.3d 811 (6th Cir.2002)).

. The Notes state that they are governed by the laws of Switzerland and the ICC Brochure 322. The district court found that this means that the "Notes clearly include the United States as a place of payment because of Bandagro’s agreement that its obligations under the Notes, which would include the obligation to make payment, will be governed and construed in accor[d]ance with the laws of Switzerland and by the regulations of the [ICC].” DRFP LLC v. Republica Bolivariana de Venezuela, No. 2:04-cv-793, 2009 WL 414581, at *7 (S.D.Ohio Feb. 13, 2009). Skye's expert testified that "there is no prohibition under Swiss law denying a creditor the right to initiate a demand for payment through the ICC Uniform Rules for Collection Process.” This expert's affidavit also stated that the Notes could not have been sold in the international market unless payment could be demanded outside of Venezuela. The district court interpreted these statements to mean that "it was foreseeable and intended by Bandagro that payment on the Notes would be demanded in the United States because: the Notes are bearer notes and are freely transferable, they are written in English, and the amount is listed in United States dollars.” Id.

. This situation is different from that discussed in Weltover, where the funds could be requested from a bank in New York — the payment was not actually being paid out of the country of origin. Weltover, 504 U.S. at 618, 112 S.Ct. 2160.