ANTARES AIRCRAFT, L.P.,
Plaintiff–Appellant,

v.

FEDERAL REPUBLIC OF NIGERIA,
and Nigerian Airports Authority,
Defendants–Appellees.

No. 30, Docket 91–7342.

United States Court of Appeals,
Second Circuit.

Argued Sept. 24, 1991.

Decided Oct. 28, 1991.

---

David F. Dobbins, New York City (Patterson, Belknap, Webb & Tyler, of counsel), for plaintiff-appellant.

Doris K. Shaw, New York City (Warshavsky, Hoffman & Cohen, P.C., of counsel), for defendant-appellee Federal Republic of Nigeria.

David Wippman, Washington, D.C. (Jeffrey Dunoff, Reichler & Soble, Washington, D.C. and James Reichler, White Plains, N.Y., of counsel), for defendant-appellee Nigerian Airports Authority.

Before LUMBARD, WINTER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Antares Aircraft, L.P. ("Antares"), a Delaware limited partnership with its principal place of business in New York, appeals from a judgment of the United States District Court for the Southern District of New York (John S. Martin, Jr., Judge), dismissing its claim against de-

fendants-appellants the Federal Republic of Nigeria ("FRN") and the Nigerian Airports Authority ("NAA") for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976 ("FSIA"). *See* 28 U.S.C. §§ 1330, 1332(a)(2)–(4), 1441(d), and 1602–1611 (1988). Antares brought the underlying action to recover damages for the alleged conversion of its aircraft in Nigeria, claiming that the NAA, a Nigerian corporation established pursuant to governmental decree and responsible for the operation and management of all airports in Nigeria, wrongfully detained its aircraft in Nigeria until Antares paid certain airport parking and landing fees that its lessee allegedly owed to the NAA. Antares paid these fees using funds from its New York bank account. Antares attributed the NAA's conduct to the FRN by arguing that the NAA is not truly a separate entity, but is owned and operated by the FRN and is essentially the FRN's agent.

The defendants moved to dismiss the complaint, contending that the district court lacked subject matter jurisdiction under the FSIA because neither the FSIA's "commercial activity" exception, *see* 28 U.S.C. § 1605(a)(2), nor its "expropriation" exception, *see* 28 U.S.C. § 1605(a)(3), applied. The district court granted the motion and dismissed the case. The court reasoned that the "commercial activity" exception did not apply because the alleged conversion of Antares' aircraft in Nigeria did not have a "direct effect in the United States" within the meaning of § 1605(a)(2). Rather, according to the district court, the direct effect of the defendants' conduct occurred in Nigeria where the aircraft was detained and suffered damage from exposure to the elements. The court thus rejected Antares' contention that the financial loss it suffered as a result of the defendants' conduct overseas was alone sufficient to satisfy the "direct effect in the United States" test of § 1605(a)(2). The court further held that the "expropriation" exception did not apply because the NAA did not conduct any commercial activity in the United States, a necessary element of this exception. *See* 28 U.S.C. § 1605(a)(3).

Antares appeals from the judgment of dismissal, contending, among other things, that the district court erred in finding that the financial loss Antares incurred in the United States as a result of the alleged conversion of its aircraft in Nigeria was not "a direct effect in the United States" within the meaning of § 1605(a)(2) of the FSIA. Antares also argues that the district court erred in determining that Antares failed to allege facts sufficient to conclude that the NAA engaged in commercial activity in the United States, and consequently, in ruling that the "expropriation" exception did not apply. For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

Plaintiff-appellant Antares is the owner of a DC–8–55 aircraft, its sole asset. In February 1988, Antares leased the plane to Gam Air, Ltd. ("Gam Air"), a Gambian corporation. Thereafter, Antares assigned its interest as lessor to Expert Air, Ltd. ("Expert Air"), a Nigerian company. Prior to November 1988, both Gam Air and Expert Air apparently defaulted on their respective obligations under these agreements. As a result of Expert Air's default, it appears that Antares regained possession of the aircraft.

In addition to its default, Gam Air also failed to pay the pilots and crew of the aircraft in a timely fashion. In order to recover the wages allegedly due, the pilots and crew of the aircraft commenced an action in Nigeria against Gam Air and Expert Air sometime after November 10, 1988. In connection with that action, a Nigerian court issued an order of attachment covering the aircraft. At that time, the aircraft was at the Murtala Muhammed Airport in Lagos, Nigeria.

To protect its interest in the aircraft, Antares sought from the Nigerian court, and was granted, the right to intervene as a defendant in the action. Subsequently, the Nigerian court lifted the order of attachment and Antares planned to fly the

aircraft to the United States. However, according to Antares, the NAA refused to allow it to remove the aircraft until it paid certain parking and landing fees allegedly incurred by Gam Air and owed to the NAA. Negotiations ensued in Nigeria between Antares' representatives and the NAA concerning the amount of fees due. Antares claims that, in order to regain control of its aircraft, it was forced to make a series of payments to the NAA from January 1989 until May 1989 totaling approximately $100,000. The bulk of these payments were wired from Antares' New York bank account to the NAA's agent in Nigeria. Antares also claims that the NAA directed that one payment be deposited into a California bank account. That account did not, however, belong to the NAA, but apparently belonged to Antares' local Nigerian counsel. In any event, after paying the outstanding parking and landing fees, Antares flew the aircraft out of Nigeria in May 1989.

Five months later, Antares commenced the underlying action against the FRN and the NAA in the United States District Court for the Southern District of New York to recover damages stemming from the detention and alleged conversion of the aircraft in Nigeria. The complaint alleged that the NAA wrongfully detained the aircraft as part of a scheme to extort payments from Antares. While Antares did not claim that the FRN participated directly in this undertaking, it sought to hold the FRN liable on the theory that the FRN owned and operated the NAA and that the NAA was, in effect, an agent of the FRN, and not a separate corporate instrumentality.

The defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction under the FSIA. Under the FSIA, federal and state courts are without subject matter jurisdiction to entertain an action against a "foreign state," as defined in 28 U.S.C. § 1603(a), unless the claim falls under one of the statutory exceptions set forth in 28 U.S.C. §§ 1605–1607. *See* 28 U.S.C. § 1604; *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434,

109 S.Ct. 683, 687, 102 L.Ed.2d 818 (1989); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir.1991). The parties agreed that the alleged actions qualify as the activities of a "foreign state," and thus the FRN and the NAA were entitled to immunity unless one of the FSIA exceptions applied. The district court dismissed the case after finding, among other things, that neither the "commercial activity" exception, 28 U.S.C. § 1605(a)(2), nor the "expropriation" exception, 28 U.S.C. § 1605(a)(3), applied.

With regard to the "commercial activity" exception, the court found that the detention and alleged conversion of the aircraft in Nigeria did not cause a "direct effect in the United States" within the meaning of the statute. According to the district court, the direct effect of the NAA's conduct occurred in Nigeria where the plane was detained and where it supposedly suffered damage from exposure to the elements. Although the alleged conversion may have caused Antares financial loss in the United States to the extent that it had to pay the parking and landing fees out of its New York bank account, the court concluded that this loss was an indirect consequence of the defendants' activity. The district court thus rejected Antares' claim that the financial loss it suffered in the United States as a result of the defendants' conduct overseas was alone a sufficient jurisdictional nexus to this country to satisfy § 1605(a)(2). The district court observed that the statutory test was not satisfied even assuming, as Antares alleged, that some of the funds transferred to the NAA were first paid into a California bank account (apparently belonging to Antares' Nigerian local counsel) at the NAA's request.

The district court also held that the "expropriation" exception did not apply because Antares failed to allege sufficient facts from which it could be inferred that the NAA conducted "commercial activity in the United States," a necessary element of this exception. *See* 28 U.S.C. § 1605(a)(3). The court pointed out that the NAA had submitted sworn affidavits demonstrating

the absence of commercial activity in this country.

Because the district court found that none of the FSIA exceptions applied, it dismissed the complaint against both defendants. This appeal followed.

## DISCUSSION

■ The FSIA provides the sole source of subject matter jurisdiction in cases involving foreign states. *See Shapiro*, 930 F.2d at 1017. Under the FSIA, a foreign state is entitled to immunity from suit unless its conduct falls within one of the statutory exceptions set forth in 28 U.S.C. §§ 1605–1607. *See* 28 U.S.C. § 1604; *Amerada Hess*, 488 U.S. at 434, 109 S.Ct. at 687; *Shapiro*, 930 F.2d at 1017. "When one of these exceptions applies, the foreign sovereign is stripped of immunity, and, pursuant to 28 U.S.C. § 1330(a), subject matter jurisdiction exists in the district court." *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 148 (2d Cir.1991).

■ It is undisputed that the activities of the NAA and the FRN are those of a "foreign state" within the meaning of the FSIA. *See* 28 U.S.C. § 1603(a)–(b). Therefore, unless one of the FSIA exceptions applies, there is no subject matter jurisdiction in the instant action. Under the FSIA, the foreign state has the burden of proving that it is entitled to sovereign immunity, *i.e.*, that its conduct is not covered by a FSIA exception. *See, e.g., L'Europeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. 114, 119 (S.D.N.Y.1988); *Braka v. Bancomer, S.A.*, 589 F.Supp. 1465, 1467 (S.D.N.Y.1984), *aff'd*, 762 F.2d 222 (2d Cir.1985); *see also* H.R.Rep. No. 1487, 94th Cong., 2d Sess. 7, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6616. For purposes of this appeal, the two relevant exceptions are the "commercial activity" exception, *see* 28 U.S.C. § 1605(a)(2), and the "expropriation" exception, *see* 28 U.S.C. § 1605(a)(3).

### A. The "Commercial Activity" Exception.

■ The "commercial activity" exception provides in relevant part that subject mat-

ter jurisdiction exists in a case "in which the action is based ... upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The parties do not dispute that the NAA's detention of the aircraft in Nigeria and collection of allegedly outstanding parking and landing fees were a commercial activity undertaken as part of its management of the Murtala Muhammed Airport. The primary issue on appeal is thus whether the detention of Antares' aircraft in Nigeria caused a "direct effect in the United States." More precisely, the question presented is whether the effect of the defendants' conduct was "sufficiently 'direct' and sufficiently 'in the United States' that Congress would have wanted an American court to hear the case?" *Weltover*, 941 F.2d at 152 (citation omitted). Antares contends that a direct effect occurred in this country because it suffered economic loss as a result of the aircraft's detention, and was forced to transfer funds out of its New York bank account to free the aircraft.

This Court has not squarely confronted the issue of whether there is a "direct effect in the United States" when an American corporation or partnership suffers a financial loss in the United States as a result of a foreign state's conduct abroad. *See International Hous. Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8, 11 n. 3 (2d Cir.1989); *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 312 n. 35 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). In addressing this issue, we must first consider whether the detention of the aircraft caused a sufficiently "direct effect" to Antares. Where, as here, the plaintiff is a legal person, as opposed to a natural person, any injury it incurs is, as a matter of course, financial. *See Weltover*, 941 F.2d at 152; *Texas Trading*, 647 F.2d at 312. "For the financial loss to be 'direct,' the corporate entity must itself be placed in financial peril as an immediate consequence of the defendant's unlawful activity."

*Weltover,* 941 F.2d at 152. Undoubtedly, the detention of Antares' aircraft, its sole asset, for approximately five months had a "direct effect" on Antares. The issue we must consider is whether that "direct effect" occurred "in the United States."

In determining where the effect of a defendant's conduct is felt directly, "courts often look to the place where legally significant acts giving rise to the claim occurred." *Weltover,* 941 F.2d at 152 (citing *Zedan v. Kingdom of Saudi Arabia,* 849 F.2d 1511, 1515 (D.C.Cir.1988) (for there to be a direct effect in the United States, some legally significant event must actually occur here)). For example, in *Weltover,* a foreign corporate plaintiff purchased bonds issued by a foreign state. The plaintiff exercised a contractual option to have the bonds paid in New York. The defendant foreign state failed to make payment when the bonds became due and the plaintiff sued for breach of contract. We were required to determine, among other things, whether the defendants' failure to pay caused a direct effect "in the United States." Eschewing as "too facile" an approach that would limit the effect of a defendant's conduct to the corporate plaintiff's place of incorporation or principal place of business, we held that the direct effect on the foreign plaintiff of defendants' failure to pay on the bonds occurred in the first instance in New York, because "the legally significant act," *i.e.,* defendants' breach of the contract, occurred in New York. *Weltover,* 941 F.2d at 153; *see also Texas Trading,* 647 F.2d at 312 (direct effect of defendant's breach of contract was "in the United States" because the plaintiffs were American *and* because payment was to be made in the United States).

In the instant case, the "legally significant act"—the detention and alleged conversion of the aircraft—occurred in Nigeria. In addition, all negotiations concerning the fees due took place in Nigeria, and the bulk of the payments to the NAA were wired directly to the NAA's agent in Nigeria. Thus, although Antares is an American partnership, the effect of the defendants' conduct abroad was not felt directly "in the United States," but in Nigeria.

That is, the direct effect of detaining the plane was, as the district court found, the loss of the use of the aircraft and the physical damage it suffered *in Nigeria,* and not, as Antares alleges, the financial loss that Antares suffered in the United States. *See Australian Gov't Aircraft Factories v. Lynne,* 743 F.2d 672, 675 (9th Cir.1984) (direct effect of plane crash in Indonesia was in that country, where the plane was destroyed and its functional use lost, and not in the United States where the American corporate plaintiff incurred financial loss as a result of the crash), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1189, 84 L.Ed.2d 335 (1985); *cf. Martin v. Republic of South Africa,* 836 F.2d 91, 94–95 (2d Cir.1987) (although plaintiff returned to the United States disabled as a result of defendant's conduct in South Africa, the direct effect of that conduct occurred in South Africa, not in the United States). The transfer of funds out of Antares' New York bank account, and the resultant financial loss to the partnership, are not by themselves sufficient to place the effect of the defendants' conduct "in the United States" within the meaning of § 1605(a)(2). *See Gregorian v. Izvestia,* 871 F.2d 1515, 1527 (9th Cir.), *cert. denied,* 493 U.S. 891, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989); *Zedan,* 849 F.2d at 1515.

Antares contends, however, that the effect "in the United States" was not limited to its financial loss. It claims that the NAA directed it to make at least one payment into a California bank account. According to Antares, this contact, in conjunction with its financial loss, places the direct effect of the defendants' conduct in the United States. We disagree.

Even assuming that the NAA directed that a portion of the money be deposited into the American bank account of a third party, this effect would not alone, or together with Antares' general financial loss, constitute a sufficiently direct effect in this country to satisfy the statute. *See Rafidain Bank,* 893 F.2d at 12 (foreign defendant's direction that money be deposited into its New York bank account does not satisfy "direct effect" test). *But see*

*Transamerican S.S. Corp. v. Somali Democratic Republic,* 767 F.2d 998, 1004 (D.C.Cir.1985) (foreign sovereign's seizure of American vessel overseas causing American corporate plaintiff to transfer large sum of money from its United States bank to foreign sovereign's United States bank, and causing plaintiff to incur substantial debts in United States, caused direct effect in this country). Thus, absent some legally significant act occurring in this country, the mere financial loss suffered by an American plaintiff, such as Antares, as a result of a defendant's conduct abroad, is by itself insufficient to cause "a direct effect in the United States" within the meaning of § 1605(a)(2) of the FSIA. *See Gregorian,* 871 F.2d at 1527; *Zedan,* 849 F.2d at 1515.

In sum, the NAA's detention of Antares' aircraft in Nigeria, and Antares' subsequent transfer of funds from its New York bank, did not cause a "direct effect in the United States" under § 1605(a)(2). Accordingly, subject matter jurisdiction in the instant case does not exist under the FSIA's "commercial activity" exception.

### B. The "Expropriation" Exception.

The FSIA's "expropriation" exception provides that subject matter jurisdiction exists in a case:

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3). The district court found that the "expropriation" exception did not apply because Antares failed to allege facts sufficient to support a finding that the NAA engaged in commercial activity in this country. Antares merely asserted to the district court that because the

NAA was an international airport authority, it must conduct commercial activity in the United States. In contrast, the court observed that the NAA had submitted in support of its motion to dismiss a sworn affidavit from its legal counsel that unequivocally stated, among other things, that the NAA did not own or operate any businesses in the United States, held no bank accounts in the United States, and had never purchased goods or services or entered into contracts in this country.

On appeal, Antares argues that the district court erred in finding that the NAA did not engage in commercial activity in the United States. Specifically, Antares claims that the district court improperly credited the NAA's evidence and failed to credit as true Antares' allegations concerning the NAA's commercial activity. Antares further argues that the court erred by failing to consider the FRN's commercial activity in this country in determining whether the "expropriation" exception applied. We find Antares' arguments unpersuasive.

 On a motion under Fed.R.Civ.P. 12(b)(1) challenging the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits. *See, e.g., Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976); *Weltover, Inc. v. Republic of Argentina,* 753 F.Supp. 1201, 1203 n. 2 (S.D.N.Y.), *aff'd,* 941 F.2d 145 (2d Cir.1991); *Braka,* 589 F.Supp. at 1468. In the instant case, Antares failed, in either its complaint or in the affidavit submitted in opposition to the defendants' motions to dismiss, to allege any facts that would support an inference that the NAA engaged in commercial activity in the United States. Antares' unsupported assertion to the district court that, by its very nature, the NAA must engage in commercial activity in this country, even if taken as true, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), is insufficient to support a finding of commercial activity in the face of the

NAA's sworn affidavit evidence to the contrary. *See Braka,* 589 F.Supp. at 1468.

Antares next argues that the district court erred in disregarding the FRN's commercial activity in the United States in determining whether the "expropriation" exception applied. According to Antares, the FRN's commercial activity in this country should have been attributed to the NAA because Antares alleged that the NAA was owned and controlled by the FRN and was, in effect, an agent of the FRN. Antares' argument is unavailing.

■ First, § 1605(a)(3) specifically distinguishes between when the commercial activity of the "foreign state" is relevant and when such activity of the "agency or instrumentality of a foreign state" is to be considered in determining the existence of subject matter jurisdiction. Under the statute, assuming that rights in property have been taken in violation of international law, then the "expropriation" exception applies if (1) the property taken or any property exchanged therefore "is present in the United States *in connection with a commercial activity carried on in the United States by the foreign state,*" or (2) such property "is owned or operated by an agency or instrumentality of the foreign state and *that agency or instrumentality ... [must] engage[ ] in commercial activity in the United States.*" 28 U.S.C. § 1605(a)(3) (emphasis added). Although the term "foreign state" encompasses its agencies and instrumentalities, *see* 28 U.S.C. § 1603(a), the reverse is not the case. Since Antares has not alleged that any property at issue is present in the United States in connection with the FRN's commercial activity here, the plain language of the statute focuses the inquiry on, among other things, the commercial activity of the "agency or instrumentality"—here the NAA—and not on that of the FRN. In addition, Antares' claims to the contrary notwithstanding, we see no reason to depart from the general rule that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *See First Nat'l City*

*Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 626–27, 103 S.Ct. 2591, 2599–600, 77 L.Ed.2d 46 (1983); *Dayton v. Czechoslovak Socialist Republic,* 672 F.Supp. 7, 10 (D.D.C.1986), *aff'd,* 834 F.2d 203 (D.C.Cir.1987), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988).

■ Moreover, even assuming that the NAA was an agent of the FRN, as opposed to an independent corporate entity, it would be inappropriate to attribute the FRN's commercial activity in the United States to the NAA for purposes of establishing subject matter jurisdiction under the FSIA based on the NAA's alleged expropriation of Antares' property in Nigeria. Under general principles of agency law, although the jurisdictional contacts of an agent may properly be imputed to the principal, the reverse is not true. *Cf. Gilson v. Republic of Ireland,* 606 F.Supp. 38, 44 (D.D.C.1984), *aff'd,* 787 F.2d 655 (D.C.Cir.1986); *Grove Valve & Regulator Co. v. Iranian Oil Servs., Ltd.,* 87 F.R.D. 93, 96 (S.D.N.Y.1980) (Weinfeld, J.). The district court therefore did not err in refusing to attribute the FRN's commercial activity in the United States to the NAA in determining that the NAA did not engage in commercial activity in this country. Accordingly, the court correctly concluded that it had no subject matter jurisdiction regarding either defendant in this action.

## CONCLUSION

We have examined each of Antares' remaining contentions and find them to be without merit. Based on the foregoing, the judgment of the district court dismissing this case for lack of subject matter jurisdiction is affirmed.