**Robert J. SICIGNANO, Jr.**

v.

**UNITED STATES of America**

**No. CIV.A.3:99CV1795 SRU.**

United States District Court,
D. Connecticut.

Jan. 8, 2001.

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiff.

James K. Filan, Jr., U.S. Attorney's Office, New Haven, CT, Margaret Krawiec, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, for U.S.

## RULING ON DEFENDANT'S MOTION TO DISMISS

UNDERHILL, District Judge.

The plaintiff, Robert J. Sicignano, Jr. ("Sicignano"), brought this action against the United States under the Federal Tort Claims Act ("FTCA"), seeking damages and other relief in connection with the filing of a complaint by the Internal Revenue Service ("IRS") Office of Director of Practice ("ODP") that seeks to terminate Sicignano's right to represent clients before the IRS. Sicignano claims that, by filing the complaint, the ODP chilled his exercise of certain rights protected by the United States Constitution, and caused him to suffer emotional distress and economic loss. Currently pending is the government's Motion to Dismiss (**doc. # 8**) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons set forth below, the government's motion is GRANTED.

*Background*

For the purposes of the present motion, the court must assume the following allegations of the complaint to be true. Sicignano was at all relevant times a certified public accountant and the sole practitioner in his Milford, Connecticut office. Compl. ¶ 3. A large portion of the plaintiff's practice involved representation of clients before the IRS on matters including audits, collections and appeals. Compl. ¶ 4.

Sicignano alleges that, during the summer and fall of 1996, he was especially busy with client audit and collections matters and had achieved significant success on behalf of his clients. Compl. ¶ 5. Contemporaneous with these successes, Sicig-

nano was selected for an audit of his own 1992 and 1993 individual income tax returns. Compl. ¶ 6.

In connection with that audit, on October 10, 1996, Sicignano appeared before Revenue Agent Diana Calverley with certain records pertaining to the tax years 1992 and 1993. Compl. ¶ 7. Agent Calverley insisted that Sicignano leave his records with her for later review. *Id.* Agent Calverley then approached the conference table where Sicignano was seated and indicated that Arnold Mann ("Mann"), Chief of the Examination Branch, wanted to see Sicignano before he left. Compl. ¶ 8.

Sicignano was then escorted to Mann's office and Mann proceeded to show him certain computer printouts reflecting audit and collection data over a four-year period. Compl. ¶ 9. Mann stated that Sicignano had given the IRS a hard time on a number of cases, cited four specific examples, and cautioned Sicignano: "You do not want to get a bad reputation." *Id.* Mann added that Sicignano could be suspended from practice before the IRS under Circular Number 230. *Id.* Sicignano nevertheless continued to aggressively represent his clients before the IRS. Compl. ¶ 10.

On June 2, 1997, Sicignano received a letter from the Director of Practice for the IRS questioning Sicignano's eligibility to practice before the IRS. Compl. ¶ 11. Sicignano responded and for a time no further action was taken. *Id.*

On December 5, 1997, Sicignano faxed a letter regarding a major audit of one of his clients to Richard Massini, Exam Group Manager for the IRS' Bridgeport, Connecticut office. Compl. ¶ 12. Sicignano alleges that, only days after transmitting the fax, an ODP employee telephoned counsel for Sicignano and discussed sus-

pending Sicignano for one year. Compl. ¶ 13.

■ On June 9, 1998, ODP sent Sicignano a complaint seeking to terminate his right to represent clients before the IRS ("the IRS Complaint").[1] Compl. ¶ 14. The IRS Complaint alleged that, pursuant to 31 C.F.R. § 10.50, Sicignano was subject to disbarment or suspension from practice in front of the IRS because he had failed to timely file individual federal income tax returns from 1989 to 1993 and to timely pay his individual tax liability from 1989 to 1996.

Sicignano brings this action "pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80." Compl. ¶ 1. Sicignano alleges that the IRS actions were taken in retaliation for his representing his clients aggressively before that agency. Compl. ¶ 15. Specifically, the plaintiff claims that the IRS retaliated against him

> for refusing to compromise [his clients'] rights and for the purpose of causing the plaintiff to suffer extreme emotional distress and economic loss and to chill his exercise of rights protected by the First Amendment to the United States Constitution and the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the Constitution.

Compl. ¶ 15. Sicignano further claims that: (1) "[t]he conduct of the IRS officials ... was extreme and outrageous and was carried out with knowledge that it probably would cause the plaintiff to suffer severe emotional distress". Compl. ¶ 16; (2) "[t]he IRS officials ... knew when they carried out the above-described actions that their conduct probably would cause the plaintiff to suffer emotional distress so severe that it could cause him physical

---

1. The IRS Complaint was attached to the government's Motion to Dismiss as Exhibit A. In ruling on the present motion, the court may consider the IRS Complaint because the court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See, e.g., Antares Aircraft v. Federal Republic of Nigerian,* 948 F.2d 90, 96 (2d Cir.1991); *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1010–11 (2d Cir.1986); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976). The claims set forth in the IRS complaint are, of course, allegations.

illness ...." Compl. ¶ 17; (3) "[a]s a result, the plaintiff has suffered severe emotional distress and economic loss," Compl. ¶ 18; and (4) "[t]he plaintiff's injuries were the reasonably foreseeable consequence of the actions of the IRS officials named above." Compl. ¶ 19.

The government has moved to dismiss the complaint, arguing that: (1) Sicignano cannot sue the United States under the FTCA for violations of the Constitution; and (2) Sicignano's claims are in any event barred by the discretionary function exception to the FTCA.

> Sicignano responds that:
>
> the fact that the conduct of the defendant's agents and employees clearly violated the explicit commands of the United States Constitution, while not separately actionable as a Federal Tort Claims Act matter, establishes that the officials in question did not have the discretion to engage in the conduct alleged and, thus, that the conduct underlying this action does not fall within the "discretionary function" exception to the statute.

Opposition at 4. Sicignano argues that, because the discretionary function exception applies only to actions involving an element of judgment or choice and because the defendant's agents had no discretion to violate the Constitution, the exception does not apply. *Id.*[2]

### Standard of Review

In considering a motion to dismiss for lack of subject matter jurisdiction, the ·court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction. *See At-*lantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir.1992). The court is not confined to the complaint, however, and "may [also] resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Filetech S.A. v. France Telecom S.A.,* 157 F.3d 922, 932 (2d Cir.1998), *citing Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Thus the standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under Fed.R.Civ.P. 56(e). *See Kamen,* 791 F.2d at 1011.

### Discussion

Whether or not Sicignano can sue the United States under the FTCA for the claims set forth in his complaint, those claims are barred by the "discretionary function exception" to the FTCA.

### The Federal Tort Claims Act and the Discretionary Function Exception

■ Under traditional principles of sovereign immunity, the United States is immune from suit except to the extent the government has waived its immunity. *See, e.g., Coulthurst v. United States,* 214 F.3d 106, 108 (2d Cir.2000). The FTCA is a limited waiver of sovereign immunity, providing a remedy against the federal government for claims based on the negligence of its employees. *Id.; see also* 28 U.S.C. §§ 1346(b), 2671, *et seq.* In pertinent part, the FTCA authorizes suits against the government to recover damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while act-

**2.** Sicignano also argues that his complaint asserts a constitutional claim not only under the First Amendment, but also states a claim "for violation of the Connecticut Constitution, Article First, Sections 4 and 14" and that "[t]his is a tort actionable in the Connecticut courts against individuals who are employed by any agency of the government." Def.'s Memorandum in Opposition to Motion to Dis-

miss ("Opposition") at 3. Sicignano adds that this cause of action "is in addition to his other state law tort action for intentional or reckless infliction of severe emotional distress ...." *Id.* Although Sicignano references these additional causes of action by way of argument in his brief, there are no such allegations in the complaint, nor any allegations to support such claims.

ing within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The discretionary function exception, however, is a significant limitation on the waiver of immunity provided by the Act. *See Coulthurst,* 214 F.3d at 108. That exception provides, in pertinent part, that Congress's authorization to sue the United States for damages

shall not apply to ... [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of ... an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

██ The exemption from liability under the discretionary function exception to the FTCA involves a two-step conjunctive analysis. *See* 28 U.S.C. § 2680(a); *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *United States v. Gaubert,* 499 U.S. 315, 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Coulthurst,* 214 F.3d at 109. First, the challenged negligent actions must be discretionary, in that they involve an "element of judgment or choice" and are not "controlled by mandatory statutes or regulations." *Gaubert,* 499 U.S. at 322–23, 328, 111 S.Ct. 1267; *see also Coulthurst,* 214 F.3d at 109; *In re Joint Eastern & Southern Districts Asbestos Litigation,* 891 F.2d 31, 36 (2d Cir.1989) ("The discretionary function exception [does] not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.") (internal citations omitted). Second, the judgment or choice in question must be "grounded in the social, economic or political goals of the statute and regulations" or susceptible to policy analysis. *Andrulonis v. United States,* 952 F.2d 652, 654–55 (2d Cir.1991), *quoting*

*Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954; *see also Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267 (discretionary conduct is not limited to the policymaking or planning functions, but also protects individual agents' acts of negligence that occur in the course of day-to-day activity); *Coulthurst,* 214 F.3d at 109, 111 (discretion must be grounded in considerations of social, economic or political policy that Congress intended to shield from FTCA actions).

When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert,* 499 U.S. at 324–25, 111 S.Ct. 1267 ("There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory scheme seeks to accomplish." *Id.* at 325 n. 7, 111 S.Ct. 1267).

██ Sicignano alleges conduct by the IRS taken in retaliation for Sicignano's representing his clients aggressively before that agency. For example, Sicignano alleges that: (1) an IRS employee told him that he could be suspended from practice before the IRS under Circular Number 230, Compl. ¶ 10; (2) he received a letter from the Director of Practice for the IRS questioning Sicignano's eligibility to practice before the IRS, Compl. ¶ 11; (3) an

ODP employee telephoned counsel for Sicignano and discussed suspending Sicignano for one year, Compl. ¶ 13; and (4) on June 9, 1998, ODP sent Sicignano a complaint seeking to terminate his right to represent clients before the IRS, Compl. ¶ 14. All of actions alleged in the complaint, however, involve an element of judgment or choice and are susceptible to policy analysis.

*Whether the Conduct is Discretionary in Nature*

With respect to the first step of the discretionary function analysis, the regulations and statutes governing practice before the IRS confer discretion on the Secretary of the Treasury ("the Secretary") and his designees when deciding whether and how to discipline practitioners before the IRS. Indeed, the statute entitled "Practice before the Department" expressly provides, in pertinent part that:

(a) Subject to section 500 of title 5, the Secretary of the Treasury *may*—

  (1) regulate the practice of representatives of persons before the Department of the Treasury; and

  (2) before admitting a representative to practice, require that the representative demonstrate—

    (A) good character;

    (B) good reputation;

    (C) necessary qualifications to enable the representative to provide to persons valuable service; and

    (D) competency to advise and assist persons in presenting their cases.

(e) After notice and opportunity for a proceeding, the Secretary *may* suspend or disbar from practice before the Department a representative who—

(1) is incompetent;

(2) is disreputable;

(3) violates regulations prescribed under this section; or

(4) with intent to defraud, willfully and knowingly misleads or threatens the person being represented or a prospective person to be represented.

31 U.S.C. § 330 (emphasis added); *see also* 31 C.F.R. § 10.50 ("Pursuant to 31 U.S.C. § 330(b), the Secretary of the Treasury after notice and an opportunity for a proceeding, *may* suspend or disbar any practitioner from practice before the Internal Revenue Service. The Secretary *may* take such action against any practitioner who is shown to be incompetent or disreputable, who refuses to comply with any regulation in this part, or who, with intent to defraud, willfully and knowingly misleads or threatens a client or prospective client.") (emphasis added).[3]

Similarly, the Director of Practice, as the Secretary's designee, *see* 31 C.F.R. § 10.1, has discretionary authority to discipline persons practicing before the IRS. Indeed, the regulation governing the institution of proceedings expressly provides:

Whenever the Director of Practice has reason to believe that any attorney, certified public accountant, enrolled agent, or enrolled actuary has violated any provision of the laws or regulations governing practice before the Internal Revenue Service, he *may* reprimand such person or institute a proceeding for disbarment or suspension of such person. The proceeding shall be instituted by a com-

---

**3.** 31 C.F.R. § 10.51, defines disreputable conduct for which a certified public accountant may be disbarred or suspended from practice before the Internal Revenue Service to include "[w]illfully failing to make [a] Federal tax return in violation of the revenue laws of the United States, or evading, attempting to evade, or participating in any way in evading or attempting to evade any Federal tax or payment thereof ...." 31 C.F.R. § 10.51(d). As noted above, the IRS complaint alleged that Sicignano was subject to disbarment or suspension from practice in front of the IRS because he had failed to timely file individual federal income tax returns from 1989 to 1993 and to timely pay his individual tax liability from 1989 to 1996.

plaint which names the respondent and is signed by the Director of Practice and filed in his office. Except in cases of willfulness, or where time, the nature of the proceeding, or the public interest does not permit, a proceeding will not be instituted under this section until facts or conduct which may warrant such action have been called to the attention of the proposed respondent in writing and he has been accorded opportunity to demonstrate or achieve compliance with all lawful requirements.

31 C.F.R. § 10.54 (emphasis added). Similarly, the regulation governing the authority to disbar or suspend practitioners before the IRS grants discretion to the ODP:

(a) In general. The Director of Practice *may* confer with an attorney, certified public accountant, enrolled agent, or enrolled actuary concerning allegations of misconduct irrespective of whether a proceeding for disbarment or suspension has been instituted against him. If such conference results in a stipulation in connection with a proceeding in which such person is the respondent, the stipulation may be entered in the record at the instance of either party to the proceeding.

(b) Resignation or voluntary suspension. An attorney, certified public accountant, enrolled agent, or enrolled actuary, in order to avoid the institution or conclusion of a disbarment or suspension proceeding, may offer his consent to suspension from practice before the Internal Revenue Service. An enrolled agent may also offer his resignation. The Director of Practice, *in his discretion, may* accept the offered resignation of an enrolled agent and *may* suspend an attorney, certified public accountant, or enrolled agent in accordance with the consent offered.

31 C.F.R. § 10.50 (emphasis added).

In short, the discretion afforded the Secretary and the ODP covers all of the allegedly wrongful conduct described in Sicignano's complaint, including: the letter from the Director of Practice questioning Sicignano's eligibility to practice before the IRS; the telephone call by an ODP employee discussing suspension of the plaintiff for one year from representing clients before the IRS; and the ODP's filing of a complaint seeking to terminate Sicignano's rights to represent clients before the IRS. The challenged actions involve an element of judgment or choice and are not controlled by mandatory statutes or regulations. Accordingly, the first step of the discretionary function analysis is met.

*Whether the Conduct is Susceptible to Policy Analysis*

The conduct of which Sicignano complains is susceptible to policy analysis because the ODP employees' decisions whether and how to pursue disciplinary proceedings against him implicate public policy considerations.

As discussed above, Congress provided the Department of the Treasury with broad authority to adopt the rules and regulations necessary to ensure the integrity and quality of practice before the IRS. *See, e.g.,* 31 U.S.C. § 330; *see also* H.R.Rep. No. 2518, 82d Cong., 2d Sess. 13 (1953) (discussing the authority granted to the Secretary of the Treasury and stating that "[t]he importance of the Secretary's using this authority to insure the high caliber of the Treasury bar is self-evident."). Since 1922, the Treasury Department has interpreted its statutory authority to permit regulation of all those who practice before the Internal Revenue Service. *See* Treasury Department Circular 230 (1922); *see also* 31 C.F.R. § 10.2(a) (1983) ("Practice before the Internal Revenue Service comprehends all matters connected with presentations to the Internal Revenue Service ...."). Moreover, "[t]his interpretation has been repeatedly sanctioned by Congress." *Poole v. United States,* No. 84–0300, 1984 WL 742 at *2 (D.D.C. June 29, 1984), *citing* H.R.Rep. No. 2518, 82d Cong., 2d Sess. 13 (1953) and

H.R.Rep. No. 1141, 89th Cong., 1st Sess. 3 (1965).

Moreover, the Treasury Department's rules and regulations governing practice before the IRS are aimed at protecting the integrity of a tax system that depends upon voluntary compliance. Courts have found that such efforts by an administrative agency implicate public policy considerations. For example, in *Goldsmith v. U S Board of Tax Appeals,* 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926), the Supreme Court upheld the Board of Tax Appeals' power to prescribe rules and standards for determining who could practice before it. The Court stated:

> We think that the character of the work to be done by the board, the quasi judicial nature of its duties, the magnitude of the interests to be affected by its decisions, all require that those who represent the taxpayers in the hearings should be persons whose qualities as lawyers or accountants will secure proper service to their clients and to help the board in the discharge of its important duties. In most of the executive departments in which interests of individuals as claimants or taxpayers are to be passed on by executive officers or boards, authority is exercised to limit those who act for them as attorneys to persons of proper character and qualification to do so.

*Id.* at 121, 46 S.Ct. 215.

Similarly, in *Touche Ross & Co. v. S.E.C.,* 609 F.2d 570 (2d Cir.1979), the Second Circuit upheld a Securities and Exchange Commission ("SEC") rule that enabled the SEC to discipline accountants and attorneys by refusing to allow them to practice before it. The Second Circuit recognized that:

> The role of the accounting and legal professions in implementing the objectives of disclosure policy has increased in importance as the number and complexity of securities transactions has increased. By the very nature of its operations, the Commission, with its small staff and limited resources, cannot possibly examine, with the degree of close scrutiny required for full disclosure, each of the many financial statements which are filed. Recognizing this, the Commission necessarily must rely heavily on both the accounting and legal professions to perform their tasks diligently and responsibly. Breaches of professional responsibility jeopardize the achievement of the objectives of the securities laws and can inflict great damage on public investors.

*Id.* at 580–81. The Court found that the SEC's rule was simply designed to "ensure that those professionals, on whom the Commission relies heavily in the performance of its statutory duties, perform their tasks diligently and with a reasonable degree of competence." *Id.* at 582. The Second Circuit therefore concluded that the SEC has the power to impose the sanctions at issue because they were designed to "protect the integrity of its own processes." *Id.* at 582.

Here the ODP employees' decisions whether and how to pursue disciplinary proceedings against those practicing before the IRS implicate the same policy concerns expressed in *Goldsmith* and *Touche Ross.* Judicial intervention in those decisions, through a private tort suit, would require the court to " 'second-guess' the political, social, and economic judgments of an agency exercising its regulatory function." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 798–99, 820, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The conduct challenged by Sicignano's complaint involves discretionary decisions grounded in policy, *see, e.g., Gaubert* 499 U.S. at 324–25, 111 S.Ct. 1267, and, accordingly, the second step of the discretionary function analysis is satisfied.

*Conclusion*

For the foregoing reasons, the plaintiff's action under the Federal Tort Claims Act is barred by the discretionary function ex-

ception. Accordingly, the defendants' Motion to Dismiss (**doc. # 8**) is GRANTED. The case is dismissed without prejudice and the clerk is instructed to close the file.[4]

It is so ordered.

4. In his Opposition, Sicignano states that "this suit was initially brought as a *Bivens* action, alleging constitutional violations, against individuals who happened to be federal employees at the time of their wrongdoing. For reasons the plaintiff does not really comprehend, the court over his objection converted that suit into a Federal Tort Claims Act against the United States." Opposition at 2.

The court is not aware of: any *Bivens* action by Sicignano based upon the allegations set forth in this case; any defendants other than the United States who were ever named in the complaint; or any action by the court "converting" such a claim into a case under the FTCA. The *only* complaint filed in this action states that "[t]his is an action against the United States, brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80." Compl. ¶ 1. That complaint was not an amended complaint, nor does an amended complaint appear on the docket. The court has also been unable to find any such action in this District. Other than the instant case, the only cases involving a party named Sicignano do not involve such a claim. *See United States v. Sicignano,* 3:96mc195; *United States v. Sicignano,* 3:92cr41.