Linda **SHARP** and Sharp Realty, LLC, Plaintiffs,

v.

John C. **BIVONA,** Neil R. Cahn, Kenneth J. Glassman, Michael Sharp, and John Doe # 1 through # 10, these names being fictitious, the actual names and addresses being unknown, each named party individually and jointly and in their official capacity, if any, Defendants.

No. 03 CV 895(ADS)(ETB).

United States District Court, E.D. New York.

Jan. 26, 2004.

Linda Sharp, Huntington Station, NY, Pro Se.

New York State Attorney General's Office, Mineola, NY by Ralph Pernick, Assistant Attorney General, for the Defendant John C. Bivona.

Kenneth J. Glassman, New York, NY, Pro Se.

Newman & Cahn, LLP, Carle Place, NY (Neil R. Cahn, of Counsel), for the Defendants Neil R. Cahn, and Michael Sharp.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On February 24, 2003, Linda Sharp ("Sharp" or the "plaintiff") and Sharp Realty, LLC ("Sharp Realty"), a limited liability corporation incorporated under the State of New York, commenced this action against John C. Bivona ("Bivona"), Neil R. Cahn ("Cahn"), Kenneth J. Glassman ("Glassman"), and her husband Michael Sharp ("husband"), alleging 16 causes of action. Presently before the Court are the following motions: (1) a motion by defendant Bivona to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."); and (2) a motion by defendant Glassman for summary judgment dismissing the complaint.

## I. BACKGROUND

The following facts are taken from the complaint which the Court notes is redundant and somewhat confusing. In 1999, Michael Sharp commenced a matrimonial action against the plaintiff in the Suffolk County Supreme Court. The complaint describes various incidents from the divorce proceedings involving an apartment complex in Brooklyn that the plaintiff and Michael Sharp purchased with their marital assets in 1995.

Sharp claims that, on March 1, 2001, there was a "backroom deal made in the chambers of Justice Daniel J. Loughlin ... in which full control of the family business surreptitiously was turned over to [her] husband" Michael Sharp without the plaintiff's knowledge and consent. Sharp further claims that this "backroom deal" was

implemented by Michael Sharp, his attorney Cahn, and her attorney Glassman so as "to deprive the plaintiff of monies attributable to the Brooklyn property."

The plaintiff further alleges that, although Glassman was the plaintiff's attorney in the divorce proceedings, he was appointed as receiver as a result of the "backroom deal." Sharp contends that Glassman refused "to provide an accounting of his financial activities as receiver with respect to gross receipts, business expenditures, and the like...." The plaintiff further claims that, in October or November 2001, Justice Loughlin signed an ex parte order authorizing Glassman to continue to serve as receiver. On an unspecified date, after the plaintiff objected in open court to the "backroom deal" and the ex parte order, Justice Loughlin recused himself. Shortly thereafter, without any explanation, two other justices recused themselves from the plaintiff's matrimonial proceedings. Finally, the divorce action was reassigned to Justice John C. Bivona.

Sharp alleges that Justice Bivona knew that Cahn and Glassman were misappropriating funds from the marital business. In August 2002, Justice Bivona issued an order relieving a temporary receiver, Harvey McClelland, who had been appointed by Justice Loughlin, and a second order appointing a new temporary receiver, Everett W. George. Despite these orders, the plaintiff claims that Justice Bivona permitted Glassman to act as receiver until December 2002. Sharp further alleges that Justice Bivona knew that Glassman collected but failed to account for receivership assets; dissipated assets of the marital accounts; failed to provide her with information; failed to account or make disclosures to the court; and failed to deposit receivership funds in an interest-bearing account.

In addition, the plaintiff asserts that "on November 14, 2002, January 6, 2003, January 15, 2003, January 27, 2003, [the] Defendant John Bivona failed to be patient, dignified, and courteous to [the plaintiff but] instead [sic] threatened her, subjected her to mistreatment and possible dispossession of property contrary to his responsibilities...." She also claims that Justice Bivona "failed to order complete and full discovery ... and failed to take or initiate appropriate disciplinary measures against [the] lawyers in this case for unprofessional conduct" and deprived the plaintiff of her "appellate due process rights." Furthermore, Sharp alleges that between November 2002 and January 2003, Justice Bivona initiated several ex parte communications with the other defendants.

Among other things, the plaintiff alleges a cause of action for fraud and claims that she was denied due process and equal protection. Sharp seeks monetary damages in the amount of more than $58,000,000 and also seeks an injunction against Justice Bivona preventing him from presiding over her divorce proceeding.

## II. DISCUSSION

### A. As to Glassman's Motion for Summary Judgment

As an initial matter, the Court notes that Glassman's papers in support of his motion for summary judgment are not in compliance with Local Rule 7.1 which reads:

> **Except as otherwise permitted by the court, all motions and all opposition thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion, and divided, under appropriate headings, into as many parts as there are points to be determined. Willful**

**failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default.**

This Rule is not a mere formality. Rather, this rule must be observed to inform a party of the factual basis of his adversary's arguments. In addition, in failing to comply with this rule, it places the burden on the Court to construct the legal arguments and to conduct the legal research that is the responsibility of the parties. *See V.W. Broad v. DKP Corp.*, No. 97 CV 2029, 1998 WL 516113, *3, 1998 U.S. Dist. LEXIS 12942, at *3 (S.D.N.Y. Aug. 19, 1998) ("Plaintiff's failure to oppose [the motion at issue] would require the [the Court] to construct plaintiff's legal arguments for him in order to reach the merits of defendant's motion. This is an unacceptable burden to place upon a court."). Thus, because of Glassman's noncompliance with Local Rule 7.1, his motion for summary judgment is denied without prejudice with leave to refile upon compliance with the Local Rules and the Court's Individual Rules. ·

**B. As to Justice Bivona's Motion to Dismiss**

**1. Standard of Review for Motion to Dismiss**

**a. Rule 12(b)(1)**

■ When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir. 2001); *Antares Aircraft, L.P. v. Fed. Rep. of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir.

1976). Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint but will not draw inferences favorable to the party asserting jurisdiction. *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in the affidavits may not be considered. *See Kamen v. AT & T*, 791 F.2d 1006, 1011 (2d Cir.1986).

**b. Rule 12(b)(6)**

■ In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

**c. The Plaintiff's *Pro Se* Status**

■ The Court is mindful that the plaintiff is proceeding *pro se* and that her submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v.*

*Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). District courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, the Court is also aware that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law...." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (internal quotations and citation omitted).

### 2. Rooker–Feldman Doctrine

To the extent that Sharp seeks to challenge the state court's determinations, this Court lacks subject matter jurisdiction to decide the claims under the *Rooker–Feldman* doctrine. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under this doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature," *Gentner v. Shulman,* 55 F.3d 87, 89 (2d Cir.1995), and "federal review, if any, can occur only by way of a certiorari petition to the Supreme Court," *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 197 (2d Cir.1996). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998).

This doctrine also prohibits a district court's review of state court judgments to claims that are "inextricably intertwined" with a state court's determinations. *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002). A claim is inextricably intertwined with the state court judgment when "at a minimum, ... a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), ... [and] the claim ... would be barred under the principles of preclusion." *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002) (internal quotations and citation omitted). In addition, a plaintiff cannot circumvent *Rooker–Feldman* by recasting her claim as a federal civil rights violation. *See Davidson v. Garry,* 956 F.Supp. 265, 268–69 (E.D.N.Y.1996).

There is no doubt that the plaintiff's claims for constitutional and civil rights violations and fraud arise from her matrimonial proceedings and could have been raised in state court. "The fact that [a] plaintiff alleges that the state court judgment was procured by fraud does not remove his claims from the ambit of *Rooker–Feldman.*" *Parra v. Greenpoint Mortgage Co.,* No. 01 CV 2010, 2002 U.S. Dist. LEXIS 25281, at *5–6 (Mar. 26, 2002) (quotations omitted). Indeed, even if the orders by the state court were wrongfully procured, as the plaintiff alleges, the orders remains in full force and effect until they are reversed or modified by an appropriate state court. *Id.* at 6. Put simply, the plaintiff cannot enter through the back door to evade the *Rooker–Feldman* doctrine in order to get into federal court. As such, this Court lacks subject matter jurisdiction over the plaintiff's claims against Justice Bivona.

### 3. Absolute Judicial Immunity

In addition, the claims against Justice Bivona must be dismissed under the doctrine of absolute judicial immunity. It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction.

*See Mireles v. Waco,* 502 U.S. 9, 9–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Maestri v. Jutkofsky,* 860 F.2d 50, 52–53 (2d Cir. 1988). The rule of absolute judicial immunity is necessary because "principled and fearless decision-making" will be compromised if a judge "fears that unsatisfied litigants may hound him with litigation charging malice or corruption." *Vasile v. Dean Witter Reynolds Inc.,* 20 F.Supp.2d 465, 489 (E.D.N.Y.1998) (internal quotations and citation omitted).

 The Supreme Court has emphasized that the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citation omitted). Absolute immunity exists "however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff" and "despite any 'informality with which [the judge] proceeded,' and . . . an ex parte feature of the proceeding." *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (quoting *Stump,* 435 U.S. at 363 and n. 12, 98 S.Ct. 1099). Indeed, the doctrine of judicial immunity is so expansive that it is overcome only when (1) the action is nonjudicial, *i.e.,* not taken in the judge's judicial capacity; or (2) the action, although judicial in nature, is performed in the complete absence of all jurisdiction. *Mireles,* 502 U.S. at 11–12, 112 S.Ct. 286.

Here, Sharp's claims against Justice Bivona stem from his judicial decisions while he presided over her matrimonial proceedings. Nothing in the record suggests that Justice Bivona was without jurisdiction over the proceedings or that he acted outside his judicial capacity. *See Vasile,* 20 F.Supp.2d at 489. That the plaintiff alleges that the proceedings were conducted in an erroneous and malicious manner does not abrogate the immunity. *Stump,* 435 U.S. at 363 n. 12, 98 S.Ct. 1099. Thus, Justice Bivona is entitled to absolute judicial immunity against damages claims resulting from the acts of which the plaintiff complains. Accordingly, all the claims against Justice Bivona are dismissed.

 In addition, Justice Bivona enjoys absolute immunity from the plaintiff's request for an injunction enjoining him from presiding over her divorce proceeding. In October of 1996, Congress amended Section 1983 to bar injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 309(c), 110 Stat. 3847, 3853, *see also Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999); *Hili v. Sciarrotta,* 140 F.3d 210, 215 (2d Cir.1998). Because Sharp does not allege and the record does not suggest that a declaratory decree was violated or that declaratory relief was unavailable, the claims for injunctive relief against Justice Bivona must also be dismissed. Accordingly, the motion to dismiss the complaint against Justice Bivona is granted in its entirety.

## C. The *Pro Se* Plaintiff's Representation of Sharp Realty, LLC

 There exists a longstanding rule that a corporation may not proceed *pro se* in federal court, but must appear by an attorney. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–02, 113 S.Ct. 716, 721, 121 L.Ed.2d 656 (1993). Courts which have refused to allow corporations to appear *pro se* have long recognized that "[a] corporation is an artificial entity which can act only through it agents." *See Eagle Associates v. Bank of Montreal,* 926 F.2d

1305, 1308 (2d Cir.1991) (citing *In re Hollidays's Tax Services, Inc.*, 417 F.Supp. 182, 185 (E.D.N.Y.1976)). Thus, because Sharp Realty is unrepresented by counsel, it may not proceed in this action. As such, Sharp Realty is afforded thirty days from the date of this order to retain an attorney. Failure to retain an attorney within this time will result in the dismissal of Sharp Realty, LLC as a party in this action.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that defendant Glassman's motion for summary judgment is **DENIED;** and it is further

**ORDERED,** that motion to dismiss the complaint in its entirety against defendant Justice Bivona is **GRANTED;** and it is further

**ORDERED,** that plaintiff Sharp Realty, LLC is directed to retain an attorney within thirty days of the date of this order; and it is further

**ORDERED,** the Clerk of the Court is directed to dismiss Sharp Realty, LLC from this action if it does not retain counsel within the time prescribed above; and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption of this case to read as follows:

LINDA SHARP and SHARP REALTY, LLC,

Plaintiffs,

-against-

NEIL R. CAHN, KENNETH J. GLASSMAN, MICHAEL SHARP, and JOHN DOES number 1 through 10, these names being fictitious, the actual names and addresses being unknown; each named party individually and jointly and in their official capacity, if any,

Defendants.

**SO ORDERED.**